IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

FILED
AUG 3 0 2000
U.S. DISTRICT COURT
CLERK'S OFFICE
BY _____ DEPUTY

| | | |
|---|---|---|
| JARO JONES | § | |
| | § | |
| VS. | § | CIVIL NO. A-00-CA-278 JN |
| | § | |
| UNITED STATES GOLF | § | |
| ASSOCIATION, INC. | § | |

**ORDER & OPINION**

Before the Court is Plaintiff Jones' Motion to Decide Case on the Current Record (Doc. No. 43) filed on July 14, 2000. Defendant filed its Response on July 18, 2000 in which the Defendant consented to have this case tried on the current record. The parties filed a stipulation of facts (Doc. No. 24) on June 9, 2000 and a supplemental stipulation of facts (Doc. No. 42) on July 13, 2000. Accordingly, based the stipulation of facts, the arguments of counsel presented at the preliminary injunction hearing conducted on June 14, 2000, the entire record and the applicable law, the Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a).

BACKGROUND

Plaintiff JaRo Jones is a skilled golfer who suffers from Post Polio Syndrome with Progressive Neuromuscular Atrophy. This disability substantially limits his ability to walk. Clerk's Doc. No. 24, "Stipulated Facts" at 1 (herein after referred to as "S.F."). Except for Plaintiff's dependency on a cart to move from shot to shot, he is otherwise qualified to participate in the qualifying round of the United States Senior Open Golf Championship ("Senior Open"). S.F. at 4.

The United States Golf Association, Inc. ("USGA") is a private not-for-profit association. The USGA publishes and promulgates the rules of golf. S.F. at 2. The USGA conducts thirteen

championships each year including the Senior Open. *Id.* The USGA exists for the purpose of "promoting and conserving throughout the United States the best interests and true spirit of the game of golf as embodied in its ancient and honorable traditions." *Id.* Pursuant to this tradition, the USGA does not allow the use of golf carts in the Senior Open. Many golf professionals agree with this position. *See, e.g.,* Declaration of Tom Kite, Defendant's Response to Plaintiff's Motion for Preliminary Injunction, exhibit J.

Nothing in the official Rules of Golf requires a golfer to walk. S.F. at 6. The USGA Championship Committee determined that all players must walk in the Senior Open. *Id.* The purpose of this rule is to inject a fatigue factor into the tournament which the USGA argues is a determinative factor in the outcome of a 72-hole tournament. In contrast, the PGA Tour and Senior PGA Tour[1] allow the use of carts in many of their respective events.[2] Further, the NCAA permits disabled golfers to use carts in its competitions. *Id.*

Plaintiff Jones requested a waiver of the no-cart rule in June 1998, June 1999, and March 2000. S.F. at 1-2. Jones was denied all three times. *Id.* Presumably encouraged by the Ninth Circuit's ruling in *Martin v. PGA Tour, Inc.*, 204 F.3d 994 (9th Cir. 2000) (holding the Americans with Disabilities Act applies to PGA competitions), Plaintiff Jones filed suit pursuant to Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.*, on May 1, 2000. Jones seeks injunctive

---

[1] The PGA Tour and Senior PGA Tour are operated by the PGA Tour, Inc. This is a separate entity and unrelated to the USGA. S.F. at 7.

[2] The PGA Tour allows the use of carts in the first two rounds of its Qualifying School. *Id.* The PGA Tour also allows professional golfer Casey Martin to use a cart in all its competitions as a result of Martin's suit against the PGA. *See Martin v. PGA Tour, Inc.*, 994 F. Supp. 1242 (D. Or. 1998), *aff'd*, 204 F.3d 994 (9th Cir. 2000) (holding the Americans with Disabilities Act applies to PGA competitions). The Senior PGA Tour allows the use of carts in all but one of its events. S.F. at 7.

2

relief that would require the USGA to allow him to use a cart to play in the Senior Open and its qualifying round. The Court entered a preliminary injunction on June 14, 2000, requiring the USGA to accommodate Plaintiff by allowing him to use a cart in the qualifying round of the Senior Open held at the Fair Oaks Ranch Golf and Country Club, Boerne, Texas. The Court further ordered that in the event Plaintiff qualified, the USGA would be required to accommodate Plaintiff by allowing him the use of a cart at the Senior Open held at Saucon Valley Country Club, Bethlehem, Pennsylvania.

Plaintiff Jones used a golf cart in the qualifying round of the 2000 Senior Open but did not post a score low enough to qualify for the championship. S.F. Supp. at 2. Plaintiff now seeks permanent injunctive relief against the USGA that would allow him to compete in the 2001 Senior Open and its qualifying round with the same accommodation he was provided in the 2000 Senior Open.

## PUBLIC ACCOMMODATION DISCRIMINATION

(Plaintiff's First Claim for Relief)

The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181(a) provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

Plaintiff Jones is disabled within the meaning of the ADA. S.F. at 1. Defendant United States Golf Association was the operator of: (a) the Fair Oaks Ranch Golf and Country Club, Boerne, Texas, during the June 19, 2000 qualifying round for the 2000 Senior Open; and (b) the Saucon Valley Country Club, Bethlehem, Pennsylvania, during the 2000 Senior Open on June 29 through July 2, 2000 for the purposes of the ADA. S.F. Supp. at 1. The issues before the Court are whether a golf course on

3

which a tournament operated by the USGA is held is a place of public accommodation as defined by the ADA and, if so, whether the USGA discriminated against Plaintiff Jones by refusing to modify its no-cart rule.

*Place of Public Accommodation*

The USGA argues there are two separate areas during a tournament, the area "inside the ropes," which is essentially the fairways and greens where the spectators are prohibited from going, and the area "outside the ropes" where the spectators gather to watch the tournament. The USGA stipulated that it must comply with the ADA for purposes of the area "outside the ropes." S.F. at 5. The question is whether the tournament's competition area is a place of public accommodation subject to the ADA. Two Courts have found that it is. *Martin*, 204 F.3d at 996-99; *Olinger v. United States Golf Ass'n*, 55 F. Supp. 2d 926, 930-33 (N.D. Ind. 1999), *aff'd on other grounds*, 205 F.3d 1001 (7th Cir. 2000).

42 U.S.C. § 12181(7)(L) generally defines a place of public accommodation as a "place of exercise or recreation" and specifically lists a golf course as such a place. Alternatively, § 12181(7)(C) defines a place of public accommodation to include a "theater, concert hall, stadium, or other place of exhibition or entertainment." A golf course during a tournament is clearly either a place of exercise or recreation or a place of exhibition or entertainment. Regardless, USGA argues the area inside the ropes, the playing field, should be exempted from either definition because the spectators are not allowed there. The Ninth Circuit disagreed and held that Title III applies to the playing field. *Martin*, 204 F.3d at 997. That holding is supported by cases involving disabled student athletes. These courts also held that Title III of the ADA applies to the playing field as well as the spectator area. *See Bowers v. NCAA*, 9 F. Supp. 2d 460, 485-89 (D.N.J. 1998); *Tatum v. NCAA*, 992 F. Supp. 1114, 1121 (E.D. Mo. 1998); *Dennin v. Connecticut Interscholastic Athletic Conference, Inc.*, 913 F. Supp. 663, 670 (D. Conn.),

4

*vacated as moot*, 94 F.3d 96 (2d Cir. 1996); *Ganden v. NCAA*, 1996 WL 680000 at *8-11 (N.D. Ill. Nov. 21, 1996). "The fact that entry to a part of a public accommodation may be limited does not deprive the facility of its character as a place of public accommodation." *Martin*, 204 F.3d at 997. *See also* U.S.C. § 12181(7)(J) (a private school is a place of public accommodation); *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122 (3rd Cir. 1998) (holding a hospital can be liable under Title III when it denied a doctor staff privileges (which are only open to a highly restricted group of doctors with certain credentials) due to his disability); *Rothman v. Emory Univ.*, 828 F. Supp. 537, 541 (N.D. Ill. 1993) (a private law school is a place of public accommodation). Accordingly, the Court finds the ADA applies to the area inside the ropes as well as the spectator areas.

The Court further finds that the area inside the ropes is not as restricted as the USGA argues. Any member of the public who is over 50 can apply to compete in the Senior Open. S.F. at 3. There are 156 slots available for the tournament. *Id.* A golfer is automatically qualified is he falls within any of 21 categories. If a golfer does not fall within one of the 21 categories, he must qualify at one of 43 qualifying sites. To play in a qualifying tournament, the golfer must be a "professional" or have a "Certified Handicap Index of 3.4 or better." *Id.* For this year's Senior Open there were 97 slots available to be "won" at the sectional qualifying tournaments. *Id.* at 4. Therefore, any member of the public who is over 50 and has a handicap of 3.4 or better may play in a qualifying tournament and could qualify to play in the Senior Open if they score low enough. The fact that only a relatively small percentage of the public may be over 50 and have a handicap of 3.4 or better does not remove a golf course from Title III's definition of a public accommodation. *See Martin*, 204 F.3d at 998. Neither does the later winnowing process of narrowing the field change the nature of the facility. *Martin* at 999. Thus, the Court finds that the USGA is operating a place of public accommodation within the meaning

5

of Title III.

The USGA additionally argues that a golf course used for its tournament is a "mixed use facility." *See* 28 C.F.R. Pt. 36, App. B at 623-24. Under the mixed use theory, there are certain facilities that are not places of public accommodation under Title III but have carved out certain zones or separate entities to which Title III of the ADA applies. For example, in a factory that conducts tours open to the public, Title III would not apply to the main factory, but would apply to the tour route. *See Id.* at 624. In another example, a company that grows food produce and sells its goods exclusively on a wholesale basis is not a place of public accommodation. *Id.* at 623. But, if that company were to operate a road side stand where crops were sold to the public, the stand would be a place of public accommodation covered by Title III. *Id.* Finally, in a large hotel that also maintains a separate residential wing, the residential wing is not a place of public accommodation but the rest of the hotel is. *Id.*

USGA argues that its use of a golf course during a tournament is similar to one of these examples. Its basic premise is that it may take a facility that is initially and otherwise unquestionably a place of public accommodation and carve out of that facility certain zones that are exempt. Other Courts have rejected this argument. *See Martin*, 204 F.3d at 998; *Olinger*, 55 F. Supp. at 931 (holding the regulations do not provide "for a private enclave in a public accommodation"). This Court agrees. The regulations provide that a place that is otherwise *not* a place of public accommodation may carve out certain areas, or create certain separate entities, that are subject to Title III of the ADA. There is no basis for finding the opposite – that a place defined as a public accommodation can have certain exempt zones carved from it. Thus, the Court finds that nothing in the ADA or its regulations provides that portions of a place of public accommodation may be exempt from coverage.

6

USGA cites to two cases, *Louie v. Ideal Cleaners*, 1999 WL 126191 (N.D. Cal. 1999), and *Jankey v. Twentieth Century Fox Film Corp.*, 212 F.3d 1159 (9th Cir. 2000) in further support of its mixed use theory. In both cases a disabled person was seeking access to a place not open to the public (certain facilities at a movie studio lot in *Jankey*, and an employee bathroom in *Louie*). These cases do not apply to this case because Plaintiff is not seeking admission to a place he is not entitled to be. He is qualified to be "inside the ropes" and seeks modification of the no-cart rule pursuant to the ADA.

In conclusion, the Court finds that a golf course remains a place of public accommodation during USGA tournaments. Further, the Court finds that the regulations do not provide for carving out exempt zones under a mixed use theory.

*Discrimination*

Having found that a golf course remains a place of public accommodation during tournament play, the Court must determine whether the USGA's no-cart rule discriminates against Plaintiff Jones. 42 U.S.C. § 12182(b)(2)(A)(ii) defines discrimination to include the following:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

Thus, the Court must determine whether the use of a cart during tournament play is a reasonable modification and whether such modification would fundamentally alter the competition.

1. Reasonable Modification.

Plaintiff has the burden of proving that he requested a modification and that the modification

is reasonable. *Martin*, 994 F. Supp. at 1242; *Johnson v. Gambrinus Co./Spoetzel Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997). He may satisfy this burden by introducing evidence that the requested modification is reasonable "in the general sense, that is, reasonable in the run of the cases." *Id*. If he meets this burden, the Defendant must make the modification unless it would fundamentally alter the nature of the competition. *Id*. It is undisputed that Jones requested modification of the no-cart rule. S.F. at 1-2.

The Court finds the request is reasonable. Nothing in the rules of golf requires walking. The USGA allows competitors to use carts during the U.S. Senior Amateur Championship and the U.S. Senior Women's Amateur Championship. The Senior PGA Tour permits players to ride a cart during qualifying rounds and Senior Tour tournaments. The PGA Tour allows players to use carts in two of the three stages of its Qualifying School Tournament. Further, neither the Senior PGA Tour nor the PGA Tour imposes a penalty or handicap on players who choose to ride in applicable events. *See Martin*, 994 F. Supp. at 1248. Additionally, the NCAA and PAC 10 athletic conference permit the use of carts for disabled golfers. *Id*. Pursuant to the *Johnson* analysis, the Court finds this evidence meets Plaintiff's burden of demonstrating that a cart is a reasonable modification to accommodate his disability.

2. Fundamental Alteration

Once the Plaintiff proves the requested modification is reasonable, the Defendant must comply unless it proves the requested modification would fundamentally alter the nature of the public accommodation. *Johnson*, 116 F.3d at 1059-60; *Martin*, 994 F. Supp. at 1249. Thus, the USGA must prove that Plaintiff Jones' use of a cart would fundamentally alter the competition. "The evidence must 'focus [] on the specifics of [Jones'] circumstances and not on the general nature of the

accommodation.'" *Martin*, 204 F.3d at 1001 (citing *Johnson*, 116 F.3d at 1060). "The issue here is not whether use of carts generally would fundamentally alter the competition, but whether the use of a cart by [Jones] would do so." *Martin*, 204 F.3d at 1001.

The *Martin* cases found that Casey Martin's use of a cart did not fundamentally alter competition. *Martin*, 994 F. Supp. at 1249-53; *Martin*, 204 F.3d at 999-1002. Based on these cases, the affidavits filed and transcripts from the *Olinger* trial (*See* Defendant's Opposition to Preliminary Injunction (Doc. No. 22), App. A-F), the Court finds that Jones' use of a cart would not give him an advantage over other players that would fundamentally alter the competition.

First, nothing in the rules of golf prohibits the use of a cart. *See* Rule 1-1 of the Rules of Golf promulgated by the USGA. Second, most players choose to walk even when given the opportunity to ride because they feel walking gives them an advantage over riding. *See Martin*, 994 F. Supp. at 1251. Third, USGA's justification for the no-cart rule is the fatigue factor that walking injects into the game. Based on the evidence, the Court finds that "fatigue factor injected into the game of golf by walking the course cannot be deemed significant under normal circumstances." *Martin*, 204 F.3d at 1000 (citing *Martin*, 994 F. Supp. at 1250). Rather, "fatigue . . . is primarily a psychological phenomenon. . . . Stress and motivation are the key ingredients." *Id.* In Jones' situation, the Court follows *Martin* and finds that

> the fatigue plaintiff endures just from coping with his disability is undeniably greater than the fatigue injected into tournament play on the able-bodied by the requirement that they walk from shot to shot. Walking at a slow pace – to the able bodied – is a natural act, of little more difficulty than breathing. . . . Walking for [Jones] is a different story. . . . To perceive that the cart puts him – with his condition – at a competitive advantage is a gross distortion of reality. As plaintiff endures greater

9

fatigue even with a cart that his able-bodied competitors by walking, it does not fundamentally alter the nature of the [USGA's] game to accommodate him with a cart. *Martin*, 994 F. Supp. at 1251-52.

Fourth, the USGA relies on *Olinger v. United States Golf Ass'n*, 205 F.3d 1001 (7th Cir. 2000), in which the Seventh Circuit found the use of a cart would fundamentally alter the competition. *Olinger*, 205 F.3d at 1006-07. The Seventh Circuit did not analyze fundamental alteration under the *Johnson* test employed by the Fifth Circuit. The Seventh Circuit did not specifically determine whether Olinger's use of a cart would fundamentally alter the competition, but more generally looked at whether the game would be fundamentally altered if the no-cart rule was eliminated. *Olinger*, 205 F.3d at 1005-06. Since the Fifth Circuit requires this Court to consider whether Jones' use of a cart specifically would fundamentally alter the game, the Court finds the *Olinger* case inapplicable on this issue. Had the Seventh Circuit applied the *Johnson* test, it likely would have reached the same conclusion as the *Martin* cases since the district court in *Olinger* found that "Ford Olinger must ride a cart to play, and even with a cart he is likely to be more fatigued at the day's end than a healthy Tiger Woods or a healthy David Duvall." *Olinger v. United States Golf Ass'n*, 55 F. Supp. 2d 926, 937 (N.D. Ind. 1999). Accordingly, the Court finds that permitting Plaintiff Jones the use of a cart in the Senior Open would not fundamentally alter the nature of the competition.

Finally, USGA argues that it is not equipped to handle the administrative burden of requests for waivers of the no-cart rule. Courts have held that an accommodation is unreasonable if it imposes a heavy financial and administrative burden. *See Olinger*, 205 F.3d at 1005-06. This year, the USGA received 3,050 applications to compete in the Senior Open. S.F. at 3. Between 1986 and 1998, the USGA only received 12 requests from 11 different people seeking a waiver of the no-cart rule. S.F. at

8. The Court finds that this would not place an undue burden on the USGA to handle requests for waivers.

## PROFESSIONAL ADVANCEMENT

(Plaintiff's Second Claim for Relief)

In Plaintiff's second claim for relief, he alleges that the USGA is a private entity that offers examinations or courses related to applications, licensing, certification or credentialing for professional or trade purposes as those terms are defined in the ADA, 42 U.S.C. § 12189. Plaintiff alleges the sectional qualifying round constitutes such an examination or course and that the USGA has failed to offer the examination in a manner accessible to Jones. This argument was summarily rejected in *Martin*, 994 F. Supp. at 1247. This Court also summarily rejects this argument since these sections clearly apply only to exams such as the bar exam or the Scholastic Aptitude Test. *See* 28 C.F.R. Pt. 36, App. B § 36.309. There is no basis for applying this section to qualifying rounds of a golf tournament. Thus, the Court finds that Plaintiff cannot recover on this claim.

## CONCLUSION

The Court finds that the Americans with Disabilities Act applies to the United States Senior Open Golf Championship and that allowing Plaintiff Jones the use of a golf cart during the tournament and its qualifying round is a reasonable accommodation that does not fundamentally alter the nature of the event. Second, the Court finds that the qualifying rounds of the Senior Open are not examinations or courses within the meaning of the ADA. Accordingly, based on public accommodation discrimination, the USGA will be permanently enjoined from denying Jones the use of a cart during any Senior Open and its qualifying rounds.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant United States Golf Association, Inc. is liable on Count I of Plaintiff's Complaint, Public Accommodation, and is hereby permanently ENJOINED from denying Plaintiff Jones the use of a golf cart during any United States Senior Open Golf Championship and its qualifying rounds.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant USGA is not liable on Count II of Plaintiff's Complaint, Professional Advancement.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff is entitled to recover his costs and attorney fees for his public accommodation claim pursuant to 42 U.S.C. § 12205. Such amount shall be set by separate post-judgment Order upon the filing of Plaintiff's application for fees and costs in compliance with W. Dist. Local R. CV-7(j).

IT IS FURTHER ORDERED that this case is CLOSED and any pending motions are hereby DISMISSED AS MOOT.

SIGNED AND ENTERED this 30th day of August, 2000.

JAMES R. NOWLIN
CHIEF UNITED STATES DISTRICT JUDGE